## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

STEPHEN BUSHANSKY,

      Plaintiff,

v.

LIBERTY OILFIELD SERVICES INC.,
CHRISTOPHER A. WRIGHT,
KEN BABCOCK,
PETER A. DEA,
WILLIAM F. KIMBLE,
N. JOHN LANCASTER, JR.,
JESAL SHAH,
BRETT STAFFIERI,
CARY D. STEINBECK, and
GALE A. NORTON,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.     Plaintiff brings this action against Liberty Oilfield Services Inc. ("Liberty Oilfield" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a stock issuance

in connection with a proposed transaction, pursuant to which the Company will acquire Schlumberger Limited's ("Schlumberger") onshore hydraulic fracturing business in the United States and Canada ("OneStim"), including its pressure pumping, pumpdown perforating, and Permian frac sand businesses in exchange for a 37% equity interest in the combined company (the "Proposed Transaction").

2.      On September 1, 2020, Liberty Oilfield and Schlumberger issued a joint press release announcing that they had entered into a Master Transaction Agreement (the "Transaction Agreement") by and among Schlumberger Technology Corporation ("Schlumberger US"), Schlumberger Canada Limited ("Schlumberger Canada" and, together with Schlumberger US, the "Schlumberger Parties"), Liberty Oilfield Services New HoldCo LLC ("US Buyer"), LOS Canada Operations Inc. ("Canadian Buyer"), and the Company, pursuant to which the Company will acquire certain assets and liabilities of the Schlumberger Parties' OneStim business, (the "Transferred Business") in exchange for up to 66,326,134 shares of Liberty Oilfield Class A common stock ("Shares Consideration"), and a non-interest bearing demand promissory note payable in either cash or a portion of the Shares Consideration (the "Canadian Buyer Note").

3.      On October 29, 2020, Liberty Oilfield filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Liberty Oilfield stockholders vote in favor of the issuance of 66,326,134 shares of Class A common stock in connection with the Proposed Transaction and pursuant to the Transaction Agreement (the "Stock Issuance"), omits and/or misrepresents material information concerning, among other things: (i) the Company's and the Transferred Business' financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Tudor Pickering Holt & Co Advisors LP ("TPH");

and (ii) TPH's potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Liberty Oilfield's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Stock Issuance.  Plaintiff seeks to enjoin the stockholder vote on the Stock Issuance unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Liberty Oilfield is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of Liberty Oilfield common stock.

9.      Defendant Liberty Oilfield is a Delaware corporation with its principal executive offices located at 950 17th Street, Suite 2400, Denver, Colorado 80202.  Liberty Oilfield is an independent provider of hydraulic fracturing services to onshore oil and natural gas exploration and production companies in North America.  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "LBRT."

10.     Defendant Christopher A. Wright ("Wright") serves as the Company's Chairman of the Board, Chief Executive Officer ("CEO") and has been a director of the Company since January 2018.

11.     Defendant Ken Babcock ("Babcock") has been a director of the Company since January 2018.

12.     Defendant Peter A. Dea ("Dea") has been a director of the Company since January 2018.

13.     Defendant William F. Kimble ("Kimble") has been Lead Director of the Company since October 2018 and a director since January 2018.

14.     Defendant N. John Lancaster, Jr. ("Lancaster") has been a director of the Company since January 2018.

15.     Defendant Jesal Shah ("Shah") has been a director of the Company since January 2018.

16.     Defendant Brett Staffieri ("Staffieri") has been a director of the Company since January 2018.

17.     Defendant Cary D. Steinbeck ("Steinbeck") has been a director of the Company since January 2018.

18.     Defendant Gale A. Norton ("Norton") has been a director of the Company since July 2019.

19.     Defendants identified in paragraphs 10 to 18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     Schlumberger is a Curacao corporation with its principal executive offices located at 5599 San Felipe, Houston, Texas 77056.  Schlumberger is the world's leading provider of technology for reservoir characterization, drilling, production, and processing to the oil and gas industry.  With product sales and services in more than 120 countries and employing approximately 85,000 people as of the end of second quarter of 2020 who represent over 170 nationalities, Schlumberger supplies the industry's most comprehensive range of products and services, from exploration through production, and integrated pore-to-pipeline solutions that optimize hydrocarbon recovery to deliver reservoir performance sustainably.  Schlumberger's common stock trades on the New York Stock Exchange under the ticker symbol "SLB."

21.     US Buyer is a Delaware limited liability company, the managing member of which is the Company.

22.     Canadian Buyer is a British Columbia corporation and indirect, wholly-owned subsidiary of US Buyer.

23.     Schlumberger US is a Texas corporation.

24.     Schlumberger Canada is a corporation organized pursuant to the laws of the Canadian Province of Alberta.

## SUBSTANTIVE ALLEGATIONS

### Company Background

25.     Liberty Oilfield is an independent provider of hydraulic fracturing services and

goods to onshore oil and natural gas exploration and production ("E&P") companies in North America.  The Company provides its services primarily in the Permian Basin, the Eagle Ford Shale, the Denver-Julesburg Basin (the "DJ Basin"), the Williston Basin, the San Juan Basin and the Powder River Basin.  Liberty Oilfield has grown organically from one active hydraulic fracturing fleet in December 2011 to 24 active fleets in February 2020.

26.     On October 27, 2020, the Company issued a press release announcing its third quarter 2020 financial results, including revenue of $147 million, a 67% increase from $88 million in the second quarter of 2020; net loss after taxes of $49 million compared to net loss of $66 million in the second quarter of 2020; adjusted EBITDA improved 75% to a loss of $3 million from a $13 million loss in the second quarter; and fully diluted loss per share was $0.41 for the third quarter of 2020 compared to loss of $0.55 per share for the second quarter of 2020.  Defendant Wright commented on the quarter's results stating:

> As our industry emerges from the depths of the downturn, our third quarter results showcase an endorsement from our customers of our high-quality service and technology offerings.  Our business expanded with top tier customers during the third quarter, and we entered a major gas basin, the Haynesville Shale, with an existing customer.  The completions activity rebound is modestly ahead of the pace we expected earlier this year.  Revenues increased to $147 million in the third quarter and Adjusted EBITDA, excluding non-cash items, was approximately $1 million for the quarter.  Total liquidity was $154 million, with no borrowings drawn on our ABL facility.  The past six months have been a testing time for our industry and the world.  I am proud of the strength and tenacity that the Liberty family has demonstrated throughout this period of volatility.

**The Proposed Transaction**

27.     On September 1, 2020, Liberty Oilfield and Schlumberger issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> DENVER & HOUSTON--Liberty Oilfield Services Inc. (NYSE: LBRT) and Schlumberger (NYSE: SLB) announced today an agreement for the contribution of Schlumberger's onshore hydraulic fracturing business in the United States and Canada ("OneStim®"), including its pressure pumping, pumpdown perforating,

6

and Permian frac sand businesses to Liberty in exchange for a 37% equity interest in the combined company. The combined company will deliver best-in-class completion services for the sustainable development of unconventional resource plays in the United States and Canada land markets.

The transaction is expected to close in the fourth quarter of 2020 and is subject to Liberty stockholder approval, regulatory approvals and other customary closing conditions. Following the closing of the transaction, Liberty will offer one of the most innovative suites of completion services and technologies to operators in onshore North America. Liberty will continue to be led by its current management team.

Liberty Chairman and Chief Executive Officer Chris Wright stated, "From day one, the Liberty team has been laser focused on delivering superior returns for our customers and stockholders. The last several months have been extremely challenging for the world, the industry and the Liberty family. These times also bring opportunity. This transaction will be a transformative step forward in our journey as a company. Our expanded technology portfolio and breadth of operations will enable Liberty to further raise our already high bar for safe, innovative, efficient and ESG-conscious frac operations. I look forward to the OneStim team joining Liberty on our mission to help customers provide low-cost clean oil & gas to our country and the world."

Schlumberger Chief Executive Officer Olivier Le Peuch commented, "I'm very proud we have reached this agreement to combine our OneStim business with a leader in North American hydraulic fracturing who shares a like-minded focus on customers, technology, people and our safety culture. This partnership provides an ideal home for our OneStim business and its employees and is in line with our capital stewardship strategy while benefiting from future market upside through our equity stake. Alongside the comprehensive suite of services and products that Schlumberger continues to offer in North America land, this partnership with Liberty will uniquely position us to leverage our technology and scale to significantly improve our customers' performance."

Some key transaction features, and strategic rationale, are:

- Combination of Liberty, the most innovative and efficient frac company, with the technology and scale of Schlumberger OneStim, a significant division of the world's leading oilfield services company

- Financially compelling transaction with strong benefits for Liberty and Schlumberger shareholders, creating one of the largest pressure pumping companies in North America

- 2019 combined pro-forma revenue of $5.2 billion and substantial earnings power

- Combined pro-forma market capitalization of $1.2 billion and a robust pro forma balance sheet with no net debt and significant available liquidity

- Expanded technology and operating capabilities will further increase E&P operator efficiencies, enhance shale asset economics and raise the bar for sustainable and environmentally conscious frac operations

- World-class completions data and technology portfolio including the most comprehensive production and completions database, Big Data analytics, advanced software for reservoir modeling and designing optimal completions, and frac fleet automation and electrification

- Alliance agreement will provide for future collaboration and access to the companies' technology portfolios beyond the scope of this transaction, such as Schlumberger's digital platform, subsurface expertise, downhole completions equipment, frac trees and flowback technology

**The Proxy Statement Contains Material Misstatements or Omissions**

28.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Liberty Oilfield's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Stock Issuance.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and the Transferred Business' financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, TPH; and (ii) TPH's potential conflicts of interest.

***Material Omissions Concerning Liberty Oilfield's and the Transferred Business' Financial Projections and TPH's Financial Analyses***

30.     The Proxy Statement omits material information regarding Liberty Oilfield's and the Transferred Business' financial projections.

31.     For example, the Proxy Statement fails to disclose for each of the "Company's Summary Forecast for the Transferred Business – Base Case," "Company's Summary Forecast for the Transferred Business – Low Case," "Company's Summary Forecast for the Transferred Business Alternative Demand Case," "Company's Summary Forecast for the Company – Base Case," "Company's Summary Forecast for the Company – Low Case," and "Company's Summary Forecast for the Company Alternative Demand Case": (i) unlevered free cash flow ("UFCF"); (ii) EBITDA; and (iii) the line items underlying the Company's and Transferred Business' UFCF and EBITDA over the projection period.

32.     Additionally, the Proxy Statement fails to disclose the potential cost savings and operating synergies projected by the Company's management and provided to the Board and utilized by TPH in its *Discounted Cash Flow Accretion/Dilution Analysis* and *Illustrative Undiscounted Future Value per Share Analysis*.

33.     The Proxy Statement also omits material information regarding TPH's financial analyses.

34.     The Proxy Statement describes TPH's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of TPH's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Liberty Oilfield's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on TPH's fairness opinion in determining whether to vote in favor of the Stock Issuance.

35.     With respect to TPH's *Contribution Analysis*, the Proxy Statement fails to disclose: (i) the Company's and the Schlumberger Parties' estimated EBITDA for the years 2020-2025; and (ii) the Company's and the Schlumberger Parties' Total Horsepower.

36.     With respect to TPH's *Discounted Cash Flow Contribution Analysis*, the Proxy Statement fails to disclose: (i) the Company's and Transferred Business' UFCFs utilized in the analysis; (ii) quantification of the Company's and Transferred Business' terminal values; (iii) quantification of the inputs and assumptions underlying the discount rate range of 12% to 18%; (iv) the projected net debt as of December 31, 2020 for each of the Company and the Transferred Business; and (v) the outstanding shares of common stock as of August 31, 2020.

37.     With respect to TPH's *Discounted Cash Flow Accretion/Dilution Analysis*, the Proxy Statement fails to disclose: (i) the post-acquisition company's UFCFs utilized in the analysis; (ii) quantification of the post-acquisition company's terminal value; (iii) quantification of the inputs and assumptions underlying the discount rate range of 12% to 18%; (iv) the projected net debt of the post-acquisition company as of December 31, 2020; and (v) the outstanding shares of the post-acquisition company.

38.     With respect to TPH's *Illustrative Undiscounted Future Value per Share Analysis*, the Proxy Statement fails to disclose: (i) the estimated EBITDA for the Company on a status quo basis for the calendar years 2021 through 2025; (ii) the post-acquisition company's estimated EBITDA for the calendar years 2021 through 2025; (iii) the projected net debt as of December 31 for the calendar years 2020 through 2024; and (iv) the projected fully diluted number of shares outstanding.

39.     Without such undisclosed information, Liberty Oilfield stockholders cannot evaluate for themselves whether the financial analyses performed by TPH were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Stock Issuance.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can

fully evaluate the extent to which TPH's opinion and analyses should factor into their decision whether to vote in favor of or against the Stock Issuance.

40.    The omission of this material information renders the statements in the "Certain Management Forecasts" and "Opinion of the Company's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning TPH's Potential Conflicts of Interest***

41.    The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by TPH.

42.    The Proxy Statement sets forth that:

> Pursuant to the terms of its engagement, the Company agreed to pay TPH a fee for its services that is expected to be approximately $5 million, $1.5 million of which became payable upon the rendering of TPH's opinion and the remaining portion of which is contingent upon the consummation of the proposed Acquisition. In addition, the Company agreed to pay TPH a fee of up to $1.5 million in the Company's sole discretion upon the consummation of the proposed Acquisition.

Proxy Statement at 110.   The Proxy Statement fails, however, to disclose the parameters and criteria TPH needs to satisfy to receive the discretionary fee and whether the Company anticipates paying TPH the additional fee.

43.    Additionally, the Proxy Statement sets forth that:

> TPH previously provided services to the Company on unrelated matters, including serving as an underwriter in connection with the Company's initial public offering in 2018 and, as previously disclosed to the Company, TPH previously provided services to certain controlled portfolio companies of Riverstone Holdings LLC, an indirect shareholder of the Company, on unrelated matters. TPH may in the future provide investment banking or other financial services to the Schlumberger Parties, the Company, Riverstone Holdings LLC or any of the other parties to the proposed Acquisition or their respective shareholders, affiliates or portfolio companies. In connection with such investment banking or other financial services, TPH may receive compensation.

*Id.*  The Proxy Statement fails, however, to disclose the amount of compensation TPH has received or will receive for providing such services to certain controlled portfolio companies of Riverstone Holdings LLC.

44.    Moreover, the Proxy Statement fails to disclose the specific nature of any past services TPH has provided to the Schlumberger Parties and the fees received for such services.

45.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46.    The omission of this material information renders the statements in the "Opinion of the Company's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Stock Issuance, Plaintiff and the other stockholders of Liberty Oilfield will be unable to make a sufficiently informed decision whether to vote in favor of the Stock Issuance and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

48.    Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

49.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's and the Transferred Business' financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, TPH, and potential conflicts of interest faced by TPH.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Stock Issuance.

52.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

54.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

55.     The Individual Defendants acted as controlling persons of Liberty Oilfield within

the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Liberty Oilfield and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Stock Issuance.  They were, thus, directly involved in the making of this document.

58.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Stock Issuance.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Liberty Oilfield's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Stock Issuance;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 10, 2020                 Respectfully submitted,

*/s/ Richard A. Acocelli*

Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*